UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN C. HOROWITZ,

        Petitioner,

                                CASE NO. 2:06-CV-13770

v.                                  JUDGE DAVID M. LAWSON

                                MAGISTRATE JUDGE PAUL J. KOMIVES

SHIRLEE HARRY,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     E.    *Judicial Bias (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     F.    *Suppression of Exculpatory Evidence (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     G.    *Ineffective Assistance of Counsel (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Trial Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          3.    *Appellate Counsel (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*      \*      \*      \*      \*

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.     REPORT:

A.    *Procedural History*

        1.      Petitioner Steven C. Horowitz is a state prisoner, currently confined at the Muskegon

Correctional Facility in Muskegon, Michigan.

2.      On April 13, 2000, petitioner was convicted of possessing with intent to deliver 650 grams or more of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(I); and possessing with intent to deliver marijuana, MICH. COMP. LAWS § 333.7401(2)(d)(iii), following a jury trial in the Oakland County Circuit Court.   On May 24, 2000, he was sentenced to a mandatory term of life imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT DEFENDANT HOROWITZ WAS ENTRAPPED AS A MATTER OF LAW, WHERE LAW ENFORCEMENT, ON ITS OWN INITIATIVE, BROUGHT TWO KILOGRAMS OF COCAINE TO THE DEFENDANT'S HOME AND LEFT IT THERE EVEN THOUGH THE DEFENDANT COULD NOT PAY MORE THAN A MINIMAL AMOUNT OF MONEY IN EXCHANGE.

II.     THE TRIAL COURT ERRED WHEN IT REFUSED TO GIVE THE JURY AN INSTRUCTION AS TO ATTEMPTED POSSESSION OF COCAINE DESPITE A TIMELY DEFENSE REQUEST AND THE EXISTENCE OF FACTUAL SUPPORT FOR SUCH AN INSTRUCTION.

III.    DEFENDANT HOROWITZ WAS DENIED HIS CONSTITUTIONAL AND DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN THE COURT BELOW ALLOWED THE PROSECUTION'S POLICE WITNESS TO TESTIFY AS TO THE CREDIBILITY OF THE INFORMANT, KEITH KRAMER.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Horowitz*, No. 228109, 2002 WL 393455 (Mich. Ct. App. Mar. 8, 2002) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court.  Petitioner also raised eight new claims:

I.      THE COURT OF APPEALS ERRED WHEN THEY RULED THAT THE DEFENDANT WAS NOT ENTRAPPED BY USE OF CONFIDENTIAL

INFORMANT WHEN IT ERRONEOUSLY FOUND THAT DEFENDANT HAD MADE AN AGREEMENT WITH INFORMANT TO PURCHASE TWO KILOGRAMS OF COCAINE BEFORE INFORMANT WAS ARRESTED, AS THIS ERROR OF FACT IMPLICATED AN INFORMANT WHO WAS COERCED INTO POINTING POLICE TO DEFENDANT, WHO WAS NOT TARGETED BY POLICE UNTIL INFORMANT PROVIDED TWELVE NAMES, ONE OF WHICH WAS DEFENDANT'S.

II.    THE COURT OF APPEALS ERRED WHEN THEY RULED THAT DEFENDANT WAS NOT ENTRAPPED BY USE OF A CONFIDENTIAL INFORMANT WHO WAS ALLOWED TO RUN FREE BY POLICE AGENTS WHO WERE TO ADEQUATELY SUPERVISE HIM AT ALL TIMES AND ENSURE THAT INFORMANT KRAMER WOULD NOT BE ALLOWED TO RANDOMLY SELECT WHOMEVER HE WANTED TO SELECT FOR PURPOSES OF AIDING POLICE TO SET UP REVERSE-BUY STING OPERATIONS, AND WHERE NO DEBRIEFING OR OTHER POLICE AGENCY NOTES EXIST FOR PURPOSES OF DETERMINING ANY KIND OF SPECIAL ARRANGEMENTS MADE BETWEEN POLICE AND INFORMANT, WHICH MAY HAVE BEEN RELEVANT EXCULPATORY EVIDENCE.

III.   THE COURT OF APPEALS ERRED WHEN THEY RULED THAT DEFENDANT WAS NOT ENTRAPPED BY USE OF CONFIDENTIAL INFORMANT WHO WAS ALLOWED GREAT LENIENCY BY WAY OF A FOUR-YEAR PROBATION FOR A LIFE SENTENCE OFFENSE, WHERE SUCH LENIENCY PROVISIONS WERE NEVER REVEALED TO THE JURY, TO HELP IT DECIDE UPON THE RELIABILITY OF THE CONFIDENTIAL INFORMANT'S TESTIMONY AS WELL AS INFORMANT KEITH KRAMER'S MOTIVES IN TESTIFYING AS HE DID.

IV.    THE TRIAL COURT ERRED WHEN IT RULED THAT DEFENDANT WAS NOT ENTRAPPED WHEN THE GOVERNMENT USED A SCHEME TO ESCALATE DEFENDANT'S CULPABILITY, FOR PURPOSES OF CONVICTION AND TO ESCALATE HIS TERM OF INCARCERATION TO MAXIMUM, DRACONIAN PUNISHMENT OF LIFE IN PRISON.

V.     THE TRIAL COURT ERRED WHEN IT RULED THAT DEFENDANT WAS NOT ENTRAPPED WHEN THE GOVERNMENT USED A PERSONAL FRIEND OF HIS, APPEALING TO DEFENDANT'S BONDS OF FRIENDSHIP, TO INDUCE HIM TO BUY A MUCH LARGER AMOUNT THAN HE WAS EVER USED TO PURCHASING FROM THE

INFORMANT.

VI.     THE TRIAL COURT ERRED WHEN IT RULED THAT DEFENDANT
        WAS NOT DEPRIVED OF DUE PROCESS WHEN GOVERNMENT
        AGENTS BARNSTORMED HIS HOME, WHERE THEY IMMEDIATELY
        BROKE HIS DOOR DOWN AND ENTERED AFTER ONLY SINGLE
        DIGIT SECONDS FOLLOWING THEIR "KNOCK AND ANNOUNCE"
        PROCEDURE, WHICH DID NOT GIVE DEFENDANT TIME TO EVEN
        RESPOND, LET ALONE OPEN HIS DOOR TO PROVIDE ENTRY INTO
        HIS HOME.

VII.    DEFENDANT WAS DEPRIVED OF DUE PROCESS WHEN
        GOVERNMENT AGENTS DISRUPTED THE CHAIN OF CUSTODY OF
        EVIDENCE WHEN AMOUNTS OF COCAINE SEIZED WERE NOT
        WRITTEN DOWN AT TIME EVIDENCE WAS CONFISCATED, AND IT
        WAS NOT SIGNED FOR BY THE AGENT INVOLVED IN THE SALE
        AND DISTRIBUTION OF THE DRUGS TO DEFENDANT FOR
        ANOTHER 30 MINUTES, NOR WAS ANY ITEM FINGERPRINT
        ANALYZED TO DETERMINE WHETHER DEFENDANT'S
        FINGERPRINTS WERE ON ITEMS TAKEN DURING THE RAID,
        WHICH BROKE THE CHAIN OF CUSTODY IN AN IMPERMISSIBLE
        MANNER.

VIII.   THE TRIAL COURT ERRED WHEN IT ALLOWED DEFENDANT TO
        SIT THROUGH TRIAL IN SHACKLES IN THE PRESENCE OF THE
        JURY, THEREBY PREJUDICING THE JURY AGAINST HIM, AND
        WHERE NO CURATIVE INSTRUCTION WAS GIVEN TO OFFSET THE
        PREJUDICE.

The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See*

*People v. Horowitz*, 467 Mich. 894, 653 N.W.2d 410 (2002).

    5.     Petitioner, through counsel, filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising fourteen grounds for relief.  The trial court denied the

motion on April 7, 2004, in part because some of petitioner's claims were previously raised and

decided on petitioner's direct appeal, *see* MICH. CT. R. 6.508(D)(2), in part because the claims were

not properly briefed or supported, and in part because petitioner failed to show how he was

prejudiced by the errors he raised, *see* MICH. CT. R. 6.508(D)(3)(b)(i).  *See People v. Horowitz*, No.

4

92-118236-FC (Oakland County, Mich., Cir. Ct. Apr. 7, 2004).  Petitioner thereafter filed

applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court,

raising the following claims:

> I.    IS DEFENDANT ENTITLED TO A REVERSAL OF HIS CONVICTION WHERE THE TRIAL JUDGE, PRIOR TO HEARING DEFENDANT'S MOTION TO DISMISS ON THE BASIS OF ENTRAPMENT, HAD MADE PRIOR DECISIONS AS TO TRUTHFULNESS, CREDIBILITY AND RELIABILITY OF THE PROSECUTION'S KEY WITNESS IN EARLIER PROCEEDINGS WHICH WERE NOT PART OF DEFENDANT'S RECORD AND CASE?
>
> II.   MUST THE DEFENDANT'S CONVICTION BE REVERSED WHERE THE PROSECUTION FAILED TO PRODUCE ALL EXCULPATORY AND MATERIAL EVIDENCE AS ORDERED BY THE COURT?
>
> III.  WAS DEFENDANT DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE DEFENSE COUNSEL FAILED TO INVESTIGATE AND DISCOVER THAT JUDGE HOWARD, WHO PRESIDED OVER DEFENDANT'S ENTRAPMENT HEARING, WAS THE SAME JUDGE WHO PRESIDED OVER THE POLICE INFORMANT'S COURT PROCEEDINGS AND DETERMINED THE INFORMANT TO BE TRUTHFUL AND CREDIBLE PRIOR TO THE DEFENDANT'S ENTRAPMENT HEARING?
>
> IV.   WAS DEFENDANT DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL OF RIGHT?

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for

leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)."  *People v. Horowitz*, 475 Mich. 866, 714 N.W.2d 300

(2006); *People v. Horowitz*, No. 261829 (Mich. Ct. App. Oct. 14, 2005).

6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on August 24, 2006.  As grounds for the writ of habeas corpus, he raises the four claims that he

raised on appeal in connection with his motion for relief from judgment.

5

7.    Respondent filed her answer on March 29, 2007.  She contends that petitioner's first three claims are barred by petitioner's procedural default in the state courts, and that all of the claims are without merit.

8.    Petitioner filed a reply to respondent's answer on April 26, 2007.

B.    *Factual Background Underlying Petitioner's Conviction*

The facts underlying petitioner's conviction were accurately summarized by the Michigan Court of Appeals:

> Keith Kramer, a drug dealer, was arrested on March 3, 1992, after selling a kilogram of cocaine to an undercover officer. He was charged with possession and conspiracy to deliver over 650 grams of cocaine, M.C.L. § 333.7401(2)(a)(i). Following his arrest, Kramer agreed to work with law enforcement officials. To that end, Kramer entered into an agreement whereby he could plead guilty to a reduced charge of possession with intent to deliver between 225 and 650 grams of cocaine, M.C.L. § 333.7401(2)(a)(ii) in exchange for his full cooperation and commitment to truthfully testify at subsequent trials arising from the investigations.FN1
>
> > FN1. In addition, if Kramer fully cooperated, officers agreed to testify at his sentencing and the prosecution agreed not to appeal the sentence imposed. Following Kramer's cooperation in several investigations, law enforcement agents spoke at his sentencing and he received a sentence of five years probation. In a separate and unrelated arrangement, he forfeited $334,000 in drug proceeds to law enforcement.
>
> Before Kramer was arrested, he made arrangements to sell defendant two kilograms of cocaine. Pursuant to the reduced plea agreement, Kramer contacted law enforcement officials who determined that they would conduct a reverse-buy in which defendant would purchase two kilograms of cocaine, supplied by the police, for $42,000. The police then taped a conversation between Kramer and defendant, in which defendant stated: "I'm waiting to hear from you. What's going on." Kramer set the sale for March 17, 1992. Fully expecting that the transaction would proceed through completion, the officers obtained an anticipatory search warrant.
> On the day of the sale, defendant and an undercover female officer FN2, went to defendant's home. She had a duffel bag containing two kilograms of cocaine. One kilogram was wrapped with yellow plastic tape and the other was wrapped with silver duct tape. Upon arriving at the home, defendant appeared to be expecting them and let them into his house. They went into the master bedroom where the female

officer handed defendant the duffle bag in an adjoining bathroom. In the bathroom was a digital scale and plastic baggies. Defendant opened the duffel bag, began to remove the cocaine and stated that the kilograms were different from before because they did not have floaters FN3 on them. Defendant directed the undercover officer into the bedroom where he proceeded to pull down a bed comforter revealing five piles of money. Defendant had the money laid out in stacks of $5,000, except for one pile containing only $4,700. Defendant told them that a man named Steve, whom he had met before, was coming to pickup a "good chunk" of the cocaine and that Kramer would get the rest of the money later. Kramer told defendant that part of the cocaine would be "fronted" to defendant. Defendant started to weigh and cut the cocaine while the money was being counted. Kramer then put the money in the duffel bag and he and the undercover officer left defendant's home. After being advised that the transaction was completed, the surveillance officers executed the search warrant.

> FN2. The undercover officer is a member of the Oakland County Narcotics Enforcement Team, known as "NET."

> FN3. According to testimony at trial, floatation devices are placed in packages of cocaine for easier retrieval if the packages have to be thrown into the ocean.

The search team entered defendant's house immediately. One NET officer was posted outside of defendant's house near a balcony. This officer heard members of NET announcing themselves upon entry and saw defendant come onto the balcony. He focused his flashlight and weapon at defendant and told him to "freeze." Defendant, however, looked at the officer, threw something off of the balcony, and walked back inside. In addition to the two kilograms of cocaine, the police also confiscated separate baggies of marijuana from defendant's refrigerator and from defendant's vehicle in quantities too great to signify mere personal use. Also recovered in the search were an orange and white plastic container with snow seals of cocaine discovered underneath the master bed along with a small baggie containing six snow seals of cocaine in the pocket of a suit jacket found in the master bedroom. Additionally, police observed a small plastic baggie containing paper folds of cocaine in one of defendant's drawers in the bedroom and a green dairying grinder FN4. Law enforcement officials also discovered a digital scale in the bedroom. The officers later detained an individual by the name of Steve, who arrived at defendant's residence, carrying $8,000.

> FN4. Used for the purpose of grinding cocaine and mixing in cutting agents.

The undercover officer returned to defendant's house approximately 45 minutes later, as the search warrant was being executed. She observed that one

kilogram of the cocaine was still on the bathtub and had not been touched. She observed the wrapper for another one-half kilogram which was also still in the bathroom. She testified that she saw one-half kilogram of cocaine on the ground outside of the balcony, one-half kilogram scattered on the ground surrounding the one-half kilogram and a plastic baggie and another one-quarter kilogram on the floor wedged in the doorway leading to the balcony.

Defendant was arrested and while out on bond, absconded to Florida. In 1999, law enforcement officials apprehended defendant and transported him back to Michigan. Defendant moved to dismiss the charges arguing that he was entrapped and that he was also subjected to sentence entrapment. After conducting an evidentiary hearing, the trial court denied the motion. Following a jury trial, defendant was convicted of possession with intent to deliver more than 650 grams of cocaine and possession with intent to deliver marijuana.

*Horowitz*, 2002 WL 393455, at *1-*2, slip op. at 1-3.

C.    *Procedural Default*

Respondent contends that petitioner's first three claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar."  *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear,

consistently applied, and well-established at the time of the petitioner's purported default.").

Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

>          (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

   "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

   By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

10

the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Judicial Bias (Claim I)*

Petitioner first contends that he was denied due process because the trial judge who ruled on his pretrial motion to dismiss based on entrapment and presided at trial was biased against him. Specifically, petitioner contends that the trial judge also presided at the plea of the confidential informant, Keith Kramer, and at that proceeding had determined that Kramer was truthful. Thus,

11

petitioner argues, the trial judge had prejudged both Kramer's and his own credibility before the entrapment hearing. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.    *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id*. (internal quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal

12

quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id*. at 556. Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

2.      *Analysis*

Petitioner contends that the trial judge was biased against him, particularly at the entrapment hearing, because the trial judge had earlier presided over Keith Kramer's plea hearing, and in taking the plea had found that Kramer was truthful and entering his plea voluntarily. Petitioner argues,

13

therefore, that the trial judge had prejudged Kramer's credibility, and by extension petitioner's own credibility, prior to the entrapment hearing.  This claim is without merit.

At the outset, it is doubtful that the trial judge had any preconceived notions regarding the credibility of Kramer or petitioner by the time of the entrapment hearing.  Because petitioner absconded and was at large for over seven years, Kramer's plea was taken well in advance of the proceedings in petitioner's case, and it is doubtful that the trial judge would have had more than a passing memory of Kramer's plea proceedings.  Further, a finding by the trial judge that Kramer was truthful in setting forth a factual basis for his plea is far different from a credibility finding made after an adversarial hearing involving cross-examination and the presentation of other evidence, and no reasonable jurist would have felt bound to conclude, solely by virtue of his acceptance of Kramer's plea, that Kramer was being truthful at the entrapment hearing.

In any event, even if the judge had formed some opinion regarding Kramer's credibility during the prior proceedings, this alone would not establish that the judge was biased.  As the Supreme Court explained in *Liteky*, "opinions formed by the judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky*, 510 U.S. at 555.  In other words, to require recusal, "the judge's prejudice or bias must be personal or extrajudicial."  *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)).  "'Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.'"  *Id.* (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003).  Here, petitioner contends only that the trial judge was

14

biased because he presided over Kramer's plea. He does not, however,

> point to any specific facts [the trial judge] obtained from presiding over [Kramer's] case which would raise a question about his impartiality. There is no evidence to show that the judge expressed a bias or prejudice against [petitioner] or maintained some preconceived notion about his guilt prior to [petitioner's] trial. Any information the judge learned about [petitioner] or the events surrounding his criminal activities came from his judicial activities and not from extrajudicial sources.

*Hartsel*, 199 F.3d at 820-21.

Because petitioner has identified no personal bias by the trial judge emanating from an extrajudicial source, and because the record does not show that the trial judge's prior contact with Kramer's case resulted in a "deep-seated favoritism or antagonism that would make fair judgment impossible," petitioner has failed to demonstrate that the trial judge was biased against him. *See Jamieson*, 427 F.3d at 405 (no judicial bias shown from judge's presiding over prior civil trial involving defendant); *United States v. Mason*, 118 Fed. Appx. 544, 546 (2d Cir. 2004) (no bias shown from judge's presiding over plea of defendant's accomplice who testified at defendant's trial); *United States v. Lucas*, 62 Fed. Appx. 53, 58 (4th Cir. 2003) (no bias shown from judge's presiding over prior trial against defendant, which included a suppression hearing finding that the defendant was not credible); *Hartsel*, 199 F.3d at 820-21 (no bias shown from judge's presiding over bench trial of defendant's co-defendant); *United States v. Wilson*, 77 F.3d 105 (5th Cir. 1996) (no bias shown from judge's presiding over trial of defendant's co-defendants, which included ruling on motions similar to those made by defendant); *Paradis v. Arave*, 20 F.3d 950, (9th Cir. 1994) (no bias shown from judge's presiding over co-defendant's trial, in which trial judge sentenced co-defendant to death). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Suppression of Exculpatory Evidence (Claim II)*

Petitioner next contends that the prosecutor suppressed exculpatory evidence. Specifically, he contends that the prosecutor failed to turn over police notes relating to the confidential informant, Keith Kramer. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

16

The *Brady* rule extends to evidence which is not suppressed, but is lost or destroyed.  *See California v. Trombetta*, 467 U.S. 479, 489 (1984).  This rule, however, applies only to material exculpatory evidence, that is, evidence which "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Id*. at 488-89.  However, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  In a case involving potentially useful evidence, the defendant must "show bad faith on the part of the police."  *Id*.; *see also*, *Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam).  As the Sixth Circuit has explained, *Trombetta* and *Youngblood* establish "[s]eparate tests . . . to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, versus cases where 'potentially useful' evidence is not accessible."  *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

Where the *Youngblood* bad faith requirement applies, "[t]he presence or absence of bad faith by the [government] for the purposes of the Due Process Clause must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."  *Id*. at 56 n.*.  Thus, "where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied."  *Wright*, 260 F.3d at 571; *see also*, *United States v. Garza*, 435 F.3d 73, 75 (1st Cir. 2006).  Further, the requirement that a defendant show bad faith is not eliminated by the existence of a pending

17

discovery request for the evidence, *see Fisher*, 540 U.S. at 548, nor does it depend on "the centrality of the contested evidence to the prosecution's case or the defendant's defense[.]" *Id*. at 549.

  2. *Analysis*

  At the evidentiary hearing on petitioner's motion to dismiss, petitioner's counsel called retired Michigan State Police Lieutenant Jon Kloosterhouse.  During his questioning, counsel indicated that at least some notes regarding the police interaction with Kramer had been destroyed, and Kloosterhouse responded that he had no knowledge regarding any reports made concerning Kramer.  Petitioner contends that the destruction of these notes resulted in the suppression of exculpatory evidence.  Because there is no question that the notes did not exist at the time of petitioner's trial there was no existing evidence "suppressed" by the prosecution, and his claim is governed by *Youngblood* rather than *Brady*.  Petitioner's claim fails for two reasons.

  First, petitioner merely speculates that the notes would have called into question Kramer's credibility.  However, Kramer was extensively cross-examined at trial, and petitioner does not offer any reason to believe that the police notes would have provided any additional information which would have called into question Kramer's credibility, nor has he offered anything to show that the notes had an exculpatory value which should have been apparent to the police officers.  Likewise, there is nothing to show that the evidence was material.  Under *Brady*, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).  Rather, exculpatory "evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*,

18

473 U.S. 667, 676 (1985)); *see also*, *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

Second, even assuming that some notes existed at one point and were destroyed, petitioner cannot show that the police destroyed the notes in bad faith.  Petitioner has pointed to no "independent evidence that the [police were] somehow improperly motivated," *United States v. Gallant*, 25 F.3d 36, 39 n.2 (1st Cir. 1994), or that the police "made a conscious effort to harm him or violate his rights."  *United States v. Seibert*, 148 F. Supp. 2d 559, 571 (E.D. Pa. 2001) (citing *Trombetta*, 467 U.S. at 488 ("The record contains no allegation of official animus toward respondents or of a conscious effort to suppress exculpatory evidence.").  Rather, the destruction of the notes most likely resulted from the fact that petitioner had absconded and over seven years had elapsed between the time of the transaction and petitioner's arrest in Florida.  *See Commonwealth v. Fredette*, 776 N.E.2d 464, 474 (Mass. Ct. App. 2002).

Because there is no evidence that the notes had an exculpatory value that was apparent before they were destroyed, and because there is nothing to suggest that the notes were destroyed in bad faith rather than lost as a result of petitioner's own conduct, he cannot establish a due process violation under *Youngblood*.  Further, even assuming that he could establish such a violation, he has failed to offer anything to suggest that the lost evidence was material.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Ineffective Assistance of Counsel (Claims III & IV)*

Petitioner next contends that both his trial and appellate attorneys rendered constitutionally ineffective assistance.  Specifically, he contends that trial counsel was ineffective for failing to discover that the trial judge had presided over the plea hearing of Keith Kramer, and that his appellate counsel was ineffective for failing to raises his habeas claims on direct appeal.  The Court

should conclude that petitioner is not entitled to habeas relief on these claims.

1.       *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

20

2.      *Trial Counsel (Claim III)*

Petitioner contends that his trial counsel was ineffective for failing to investigate and discover that the trial judge had presided at Keith Kramer's plea hearing, and accordingly moving for recusal. As explained above, however, petitioner has failed to show that the trial judge was biased against him, and thus any information uncovered by counsel would not have led to the judge's recusal. Thus, petitioner cannot show that counsel's performance was deficient or that he was prejudiced by counsel's performance. *See Crowe v. Mosley*, No. 2:03cv1159, 2007 WL 2332666, at *12 (M.D. Ala. Aug. 15, 2007); *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (Gadola, J.); *Kirk v. Carroll*, 243 F. Supp. 2d 125, 140 (D. Del. 2003). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Appellate Counsel (Claim IV)*

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's habeas claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny

21

petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/Paul J. Komives
                                                  PAUL J. KOMIVES
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: 3/23/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on March 23, 2009.

                                        s/Eddrey Butts
                                        Case Manager

22