UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN C. HOROWITZ,

       Petitioner,

                                            Case No. 06-13770
v.                                              Honorable David Lawson
                                              Magistrate Judge Paul J. Komives

SHIRLEE HARRY,

       Respondent.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Steven C. Horowitz filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated by the Michigan Department of Corrections in violation of the Constitution of the United States. The matter was referred to Magistrate Judge Paul J. Komives for general case management, and the magistrate judge filed his report on March 23, 2009 recommending that the petition be denied. Following an enlargement of time, the petitioner submitted timely objections and the matter is now before the Court for *de novo* review. Having analyzed the report, the petitioner's objections thereto, and the other materials on file, the Court concludes that the magistrate judge correctly analyzed the issues raised by the petition and appropriately recommended denial of the petition. Therefore, the Court will overrule the objections, adopt the report and recommendation, and deny the petition.

I.

The magistrate judge based his summation of the facts, to which neither party has objected, on a recitation of the record by the Michigan Court of Appeals. There is no need to repeat those facts here. It is enough to note that the petitioner was convicted by a jury in the Oakland County,

Michigan circuit court of possession of 650 grams or more of cocaine with intent to deliver, and possession of marijuana with intent to deliver, both in violation of Michigan Compiled Laws § 333.7401, and sentenced to a mandatory term of life imprisonment. The police targeted the petitioner for investigation based on information from an informant, Keith Kramer, a drug dealer who was arrested and agreed to help police in order to work his way out of trouble. The petitioner was apprehended in a reverse-buy operation following the execution of a search warrant at his home after he had purchased two kilograms of cocaine furnished by the police.

The drug sale took place in March 1992. While on bond, the petitioner fled the jurisdiction and was a fugitive until he was apprehended in 1999 and returned to Michigan. He then raised the defense of entrapment, both in a pretrial motion and at his jury trial. The trial judge, who also had accepted the guilty plea of informant Kramer years earlier, rejected the entrapment motion, and later a jury convicted the petitioner of the charged offenses.

The petitioner was unsuccessful on his direct appeals, and thereafter he filed a motion for relief from judgment, which was denied by the trial court on April 7, 2004. Both appellate courts denied the petitioner's application for leave to appeal, finding that he had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Horowitz*, 475 Mich. 866, 714 N.W.2d 300 (May 30, 2006); *People v. Horowitz*, No. 261829 (Mich. Ct. App. Oct. 14, 2005).

On August 24, 2006, the petitioner filed his petition, raising four grounds:

I.  PETITIONER IS ENTITLED TO A REVERSAL OF HIS CONVICTION WHERE THE TRIAL JUDGE, PRIOR TO HEARING PETITIONER'S MOTION TO DISMISS ON THE BASIS OF ENTRAPMENT, HAD MADE PRIOR DECISIONS AS TO TRUTHFULNESS, CREDIBILITY AND RELIABILITY OF THE PROSECUTION'S KEY WITNESS IN EARLIER PROCEEDINGS.

II.     PETITIONER'S CONVICTION MUST BE REVERSED WHERE THE PROSECUTION FAILED TO PRODUCE ALL EXCULPATORY AND MATERIAL EVIDENCE AS ORDERED BY THE COURT.

III.    PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

IV.     PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL OF RIGHT.

[dkt. #1]. The respondent filed an answer arguing that the claims are procedurally defaulted or lack merit. The magistrate judge recommended that the merits of the petition be addressed despite the respondent's procedural default argument, since the petitioner raised an ineffective assistance of counsel claim that might constitute cause for failing to adhere to the state procedures, and the merits of the claims would have to be assessed to determine prejudice. As discussed below, the magistrate judge found no merit in any of the claims. The petitioner filed objections to the report and recommendation on May 4, 2009.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

Although the petitioner's crime was committed before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24,

1996), that Act governs this case because it applies to applies to all habeas petitions filed after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The magistrate judge correctly summarized the provisions of that Act, as codified in the present version of 28 U.S.C. § 2254, which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Neither party takes issue with that summary. The magistrate judge identified the controlling Supreme Court precedent for each of the petitioner's four issues and concluded that the state courts' decisions were not contrary to or an unreasonable application of that precedent. The petitioner does not take issue with the magistrate judge's exposition of the controlling law. Rather, he objects to its application under the facts of his case.

A.

The petitioner's first claim is that the state trial judge was biased against him because the judge had presided over informant Kramer's plea hearing, and the judge must have found Kramer to be "truthful" in order to accept the plea. The petitioner reasons, therefore, that by making this finding, the judge had prejudged how he was going to rule at the hearing on the petitioner's entrapment motion. The petitioner also claims that his right to cross-examine Kramer was abridged because Kramer's statements made at the plea hearing were maintained under seal.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2259 (2009). The magistrate judge readily acknowledged this basic principle, but he rejected the petitioner's claim because the source of bias identified by the petitioner was confined to information that came through judicial proceedings in a related case, the likelihood of the trial judge recalling the details of the informant's plea hearing that occurred seven years before the petitioner's entrapment hearing was extremely remote, and the petitioner failed to point to any specific facts in the record that called into question the state judge's impartiality.

In his objections, the petitioner points to several pieces of evidence that he believes shows bias:

> (a) [State trial] Judge Howard allowed Kramer to plead guilty from [sic] a crime which carried a mandatory life sentence, to a crime for which he received four years probation.
>
> (b) Judge Howard accepted Kramer as credible where he agreed to allow the police to testify on his behalf, and, he accepted to [sic] prosecution's decision not to appeal the sentence that Kramer received.
>
> (c) Judge Howard <u>sealed</u> Kramer's plea proceedings and refused to allow Petitioner and his attorney access to the transcripts.

Obj. at 2.

The petitioner also argues that the sealed proceeding violated his rights to have a public trial, and to be confronted by the witnesses against him. Kramer made statements to the judge during the sealed plea proceeding, and petitioner's counsel was not allowed to refute these claims. The petitioner was also not allowed to cross-examine Kramer regarding these statements. Judge Howard

"was going to rule against Petitioner [on the entrapment motion] based on what he allowed to occur at Kramer's <u>sealed</u> plea hearing." Obj. at 3-4.

As the magistrate judge observed, judicial misconduct claims impugning the impartiality of the judge fall into two categories. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties. *See In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner that strongly suggests to the jury that the judge disbelieves the defendant's case or otherwise favors the prosecution. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). The petitioner's claim falls into the first category.

"[J]udges for the most part are presumptively capable of overcoming [biasing] influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness." *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1373 (7th Cir. 1994) (en banc). However, there are some cases where the probability of actual bias by the judge requires his recusal. "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). No pecuniary interest has been alleged here.

The petitioner's claim is that the judge was biased due to previous proceedings involving the informant against him. However, "opinions held by judges as a result of what they learned in earlier proceedings do not qualify as bias or prejudice." *Williams v. Anderson*, 460 F.3d 789, 815 (6th Cir. 2006) (citing *Liteky v. United States*, 510 U.S. 540, 551 (1994)); *cf. Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971) (holding the due process clause requires that criminal contempt proceedings

-6-

be presided over by a judge other than the one who instituted the proceeding). The petitioner seeks to evade this rule by arguing that the contact at the plea hearing was essentially an *ex parte* communication. Plainly, that was not the case. A plea hearing, although generally uncontested, still involves adverse parties each with separate interests advocated in open court. However, even if this communication were considered to be *ex parte*, it is insufficient as a matter of law to establish judicial bias. *See Getsy v. Mitchell*, 495 F.3d 295, 310-12 (6th Cir. 2007) (en banc) (noting that *ex parte* contact between judge and prosecutor was insufficient to entitle petitioner to an evidentiary hearing).

Having failed to point to any improper interest in the outcome harbored by the state judge, the petitioner seeks to prove bias based on the judge's rulings, that is, his acceptance of the informant's guilty plea and the ensuing lenient sentence. "[T]he Supreme Court [has] held that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.' To show improper prejudice, a judge's comments must 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Wilson v. Parker*, 515 F.3d 682, 701 (6th Cir. 2008) (quoting *Liteky*, 510 U.S. at 555). The fact that the judge accepted a plea from the informant and sealed the proceeding falls well short of establishing that the judge had "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See ibid.* Similarly, the mere fact that the judge weighed the credibility of the petitioner and another witness at the entrapment hearing and found the other witness to be more credible does not show bias.

The petitioner also claims that the sealed plea hearing deprived him of his right to confront the witness against him and his right to a public trial. The magistrate judge did not address this part of the petitioner's argument. The petitioner does not argue that out-of-court statements or statements from the sealed plea record were formally introduced at trial or at a hearing, nor does he claim that

he was unable to cross-examine Kramer at either proceeding. Rather, he appears to argue that he did not have access to the informant's statements at the plea hearing when he cross examined him.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas,* 380 U.S. 400, 403 (1965). The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Pointer*, 380 U.S. at 404-05 (quoting *Greene v. McElroy,* 360 U.S. 474, 496-97 (1959)). Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth." *California v. Greene*, 399 U.S. 149, 158 (1970) (citation and internal quotations omitted). The Sixth Circuit has held consistently that although cross-examination is a necessary component to the preservation of an accused's rights under the Confrontation Clause, the right to cross-examine is not limitless. *Stewart v. Wolfenbarger,* 468 F.3d 338, 347 (6th Cir. 2006).

This part of the petitioner's claim is based on the entrapment hearing, not about any defect during the trial itself. The petitioner has not pointed to any out-of-court testimonial statements against him that were accepted into evidence or considered by the presiding judge at the hearing. He complains that he was not able to complete an effective cross-examination of the informant Kramer. Yet the petitioner was able to question Kramer thoroughly during the evidentiary hearing. In fact, the petitioner was the one who called Kramer as a witness. The fact that the petitioner may

have lacked certain prior statements by Kramer does not imply that his right to confront that witness was violated. The petitioner has not identified any statement made by the informant at the plea hearing that would have been helpful to the petitioner. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (citation omitted). Certainly, there are occasions when lack of access to prior statements can hamper effective cross-examination, but the petitioner has not shown that this case falls within that scope. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend"). "Impeachment evidence . . . , as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). However, the constitutional right "to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (plurality opinion). "[S]uppression of [impeachment] evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial." *Bagley*, 473 U.S. at 678. Because the petitioner has failed even to specify a prior statement, not to mention demonstrate how access to such a statement at the evidentiary hearing or trial would have helped his cause, his objections must be overruled and his first claim for relief must fail.

B.

The petitioner's second claim, that the prosecution violated an order to release numerous discovery materials to the defense, apparently is based on the following testimony from retired Michigan state police lieutenant Jon Kloosterhouse:

> Q. Now in this particular case, there's no notes indicating that Mr. Kramer was called by any other person prior to March the 16th. That would be something you would note, would it not, sir, in the police reports?
> A. I don't know.
> Q. Alright. At any rate, as far as your understanding of the transaction between your office and the Prosecutor's Office and defense counsel, was that Mr. Kramer would debrief on various occasions. It, it has now come to our attention that the notes of March 4th, March 6th, and March 9th have, are no longer available, which means by inference that they have been destroyed. Is that something that the Michigan State Police would ordinarily do, is destroy the notes concerning a three day interviwe?
> A. I don't have any knowledge about those.

Hearing Tr., 2/14/00 [dkt. #12] at 16. The petitioner argues that "[t]he absent evidence goes to the very heart of the confidential informant's credibility . . ." Pet. at 9. He argues that it is implausible that weeks of notes had been lost without "wrongful intent" by the investigating agencies, and he contends there is no way to know whether the information might have provided important information to the defense, so the court should conduct an *in camera* hearing.

It is well established that the Due Process Clause requires the State to disclose to a criminal defendant evidence in its possession that is exculpatory, that is, favorable to the defendant on the issue of guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*,

514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  "*Brady*'s disclosure requirement includes not just information in the prosecutor's files, but 'information in the possession of the law enforcement agency investigating the offense.'"  *Owens v. Guida*, 549 F.3d 399, 416 (6th Cir. 2008) (quoting *Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002)).

The petitioner's claim is premised on police notes that were apparently lost before trial, and therefore the evidence was not in the possession of the State at the time of the petitioner's prosecution.  The magistrate judge, therefore, applied a slightly different line of authority, represented by *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which deals with evidence that has been destroyed by the State.  The magistrate judge then rejected the petitioner's claim because there is no evidence that the lost interview notes contained anything that would have impeached Kramer's credibility, since Kramer was cross-examined at trial, and there is no showing that the notes would add anything or had an exculpatory nature obvious to the officers; and the petitioner has not made any showing that the officers proceeded in bad faith.

In his objections, the petitioner restates the claims made in his petition and does not address explicitly the report and recommendation.  He argues that the trial court issued an order for discovery on October 13, 1992, yet at an evidentiary hearing on February 14, 2000, detective Kloosterhouse testified that he was unsure of the existence of the notes regarding Kramer, and whether they were ever made.  The petitioner then reasons that "[i]t is highly inconceivable that several weeks of negotiations and transactions between the confidential informant, taping sessions, and debriefing reports were all missing or destroyed."  Obj. at 5.  Their disappearance, he says, is evidence of bad faith, and he concludes without elaboration that without the benefit of these notes, "the Petitioner's constitutional right to confront was seriously impaired."  *Ibid.*

With respect to lost or destroyed evidence, the Sixth Circuit has explained:

-11-

> To safeguard a defendant's due process right to present a complete defense, the Supreme Court has developed "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 479, 485 (1984) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where "potentially useful" evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).
>
> In *Trombetta*, the Court held that the government violates a defendant's due process rights where material exculpatory evidence is not preserved. *See Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.
>
> In *Youngblood*, 488 U.S. at 57, the Court held that "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The government does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58. For the failure to preserve potentially useful evidence to constitute a denial of due process, a criminal defendant must show bad faith on the part of the government. *See id.* "The presence or absence of bad faith by the [government actor] for the purposes of the Due Process Clause must necessarily turn on the [government actor's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n*, Because the *Youngblood* court found that police did not act in bad faith by failing to preserve potentially useful evidence, it rejected Youngblood's due process claim without further analysis.

*United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001).

The petitioner has made no showing that the interview notes – if they even existed – amounted to "material exculpatory evidence." He has made no showing beyond his own speculation that the notes contained impeachment material. Therefore, to obtain relief, the Court concludes, as did the magistrate judge, that the petitioner must show that the State engaged in bad faith in

-12-

destroying the notes, if that indeed is what happened. But there is no showing that the notes were destroyed due to bad faith. As the magistrate judge noted, seven years had elapsed before the trial, and the passage of time, rather than the ill intent of the prosecutors, is the reasonable explanation for the lost notes. The state courts' decision denying the petitioner relief on his post-conviction motion was not contrary to or an unreasonable application of federal law.

C.

Finally, the petitioner claims that his trial counsel was ineffective for not investigating and objecting to the relationship between Judge Howard and Kramer from the plea hearing. He also claims that appellate counsel was ineffective for not raising the issues of bias or discovery on appeal. The magistrate judge found that the petitioner's claims of ineffective assistance of conduct failed because the underlying claims were meritless, as explained previously in the report and recommendation, and therefore the petitioner could not establish deficient performance or prejudice.

In his objections, the petitioner simply argues that his claims in counts one and two of his petition are meritorious, and therefore counsel's failure to raise these issues constitute ineffective assistance of counsel.

The magistrate judge applied the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The

Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687; *McQueen v. Scroggy,* 99 F. 3d 1302, 1311 (6th Cir. 1996) (holding that a reviewing court applying *Strickland* must determine whether counsel's alleged errors "have undermined the reliability of and confidence in the result."). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).

The petitioner argues that his trial counsel was constitutionally ineffective for failing to discover, investigate, and raise at the trial court the bias of the trial judge. However, as explained above, the petitioner's claim of bias lacks merit. "[T]here can be no constitutional deficiency in . . . counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

The petitioner also claims that his appellate counsel was ineffective for failing to raise the issues of bias and discovery violations. The Supreme Court has held that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As noted above, the petitioner's other claims are without merit. Because such claims are without merit, the petitioner is unable to show that appellate counsel's failure to raise these claims on his appeal of right was deficient, and thus fails to establish that he was denied the effective assistance of appellate counsel. *See McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004); *Mapes*, 171 F.3d at 413.

### III.

The Court agrees with the magistrate judge's statements of the law and his analysis. The petitioner's objections do not have merit. The magistrate judge correctly concluded that the decisions of the Michigan courts rejecting the petitioner's claims were neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's Report and Recommendation [dkt #31] are **OVERRULED**.

It is further **ORDERED** that the Report and Recommendation [dkt #27] is **ADOPTED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

                                                s/David M. Lawson  
                                                DAVID M. LAWSON  
                                                United States District Judge

Dated:  July 13, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 13, 2009.

                              s/Lisa M. Ware  
                              LISA M. WARE